IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:23-cr-00045-MR-WCM

| | |
|---|---|
| **UNITED STATES,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **ISAIAH FISHER,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc. 20].

**I.   PROCEDURAL BACKGROUND**

On June 6, 2023, the Defendant was charged in a Bill of Indictment with possessing a machinegun in violation of 18 U.S.C. § 922(o) and 924(a)(2). [Doc. 1]. Specifically, the Defendant was indicted for possessing "a machinegun conversion kit, commonly referred to as a Glock Switch, a part designed solely and exclusively for use in converting a weapon into a machinegun." [Id.]. The Defendant is currently scheduled for trial during the March 4, 2024, trial term. [Doc. 25].

On November 22, 2023, the Defendant filed the present Motion to Dismiss on the grounds that 18 U.S.C. § 922(o)[1] is unconstitutional in light of the Supreme Court's recent decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022). [Doc. 20]. The Government filed a Response to the Defendant's Motion to Dismiss on December 27, 2023. [Doc. 26]. The Defendant filed a Reply on January 17, 2024. [Doc. 28].

## II. ANALYSIS

In D.C. v. Heller, the Supreme Court held that "[t]he Second Amendment protects an individual right to possess a firearm unconnected with service in a militia, and to use that arm for traditionally lawful purposes, such as self-defense within the home." 554 U.S. 570, 570 (2008). The Court further explained that the sorts of weapons protected under the Second Amendment are those that are "in common use at the time," and not "dangerous and unusual weapons." Id. at 627. The Court relied in part on U.S. v. Miller, which held that prohibitions on the possession of machineguns do not violate the Second Amendment, for the proposition that "the Second Amendment does not protect those weapons not typically possessed by law-

---

[1] The statute provides in relevant part that "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1).

abiding citizens for lawful purposes." Id. at 625 (citing U.S. v. Miller, 307 U.S. 174, 179 (1939)).

In the years following Heller, the Courts of Appeals developed a two-step framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. Bruen, 597 U.S. at 17. The Fourth Circuit articulated such a framework in United States v. Chester:

> The first question is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee. This historical inquiry seeks to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification. If it was not, then the challenged law is valid. If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny.

628 F.3d 673, 680 (4th Cir. 2010) (citations omitted).

In New York State Rifle & Pistol Ass'n, Inc. v. Bruen, the Supreme Court articulated a new standard for challenges to state action under the Second Amendment, doing away with the previous "means-end" test that developed after Heller. Bruen, 597 U.S. at 19. Bruen involved a challenge to a New York state law that required an applicant for a concealed carry license to prove that "proper cause" existed in order for the licensing officer to issue it. Id. at 12. The Court struck down the law, holding that under their

3
Case 1:23-cr-00045-MR-WCM   Document 29   Filed 02/13/24   Page 3 of 8

new standard, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." Id. at 19. The Supreme Court explained that this new standard is consistent with their previous holding in Heller, as Heller "do[es] not support applying means-end scrutiny in the Second Amendment context." Id. Therefore, only the first step of the post-Heller two-step approach adopted by the federal appellate courts, the historical inquiry, is the proper test. Id.

Given that Bruen did not overrule Heller, courts have continued to uphold § 922(o) in response to Second Amendment challenges. United States v. Lane, No. 3:23CR62 (RCY), 2023 WL 5663084 (E.D. Va. Aug. 31, 2023); United States v. Wilson, No. 2:23-CR-20081-TLP-1, 2023 WL 8288989 (W.D. Tenn. Nov. 7, 2023); United States v. Bazile, No. CR 23-34, 2023 WL 7112833 (E.D. La. Oct. 27, 2023); United States v. Sturgeon, No. CR 23-6-DLB-CJS-1, 2023 WL 6961618 (E.D. Ky. Oct. 20, 2023); United States v. Cooperman, No. 22-CR-146, 2023 WL 4762710 (N.D. Ill. July 26, 2023); United States v. Kittson, No. 3:21-CR-00075-IM, 2023 WL 5015812 (D. Or. Aug. 7, 2023); see also Bevis v. City of Naperville, Illinois, 85 F.4th 1175 (7th Cir. 2023) (upholding state law assault weapons ban under Bruen). Indeed, because Bruen also did not overrule Miller, the Court's analysis

4
Case 1:23-cr-00045-MR-WCM   Document 29   Filed 02/13/24   Page 4 of 8

could end here, without wading into the specifics of the Defendant's arguments.

One such argument relies on the "common use" language from <u>Heller</u> for the proposition that machineguns are indeed in common use, and therefore the Second Amendment has evolved to cover them. The Defendant points to the fact that 741,146 machineguns were registered with the federal government. [Doc. 20 at 7-9]. This number, however, would include those machine guns possessed by law enforcement and other governmental entities, as well as firearms dealers who provide weapons to such entities. 27 CFR § 479.105 (c),(d). Defendant's source says nothing regarding the number of machine guns in the hands of ordinary citizens.[2]

The Defendant also argues that the "dangerous and unusual" justification for excluding a type of weapon from the Second Amendment requires that weapons excluded be both dangerous *and* unusual, in reliance on Justice Alito's concurring opinion in <u>Caetano v. Massachusetts</u>. 577 U.S. 411, 417 (2016). Of course, as a concurring opinion, with which only one other justice joined, it has no precedential value. Moreover, the Defendant's argument based thereon begs the question. Obviously, all firearms are

---

[2] By contrast, the same report cited by the Defendant states that more than 2.6 million silencers are registered, as are more than 3.3 million explosive devices (pipe bombs, grenades, etc.).

dangerous, so a conjunctive test would require that any unusual firearm is not protected by the Second Amendment. This would effectively and illogically turn the Second Amendment into a prohibition on "odd" weapons based on numbers and availability. Rather than reading "dangerous and unusual" as a conjunctive test, this Court instead reads "dangerous and unusual" to mean "unusually dangerous." Therefore, the fundamental question is whether machineguns are materially more dangerous than weapons currently in common use, such as handguns, hunting rifles, or shotguns. The answer is clearly yes. Rather than producing a single projectile of lead, machineguns create a veritable explosion of lead shrapnel. Furthermore, the spray of projectiles from a machinegun is largely uncontrolled, except when in the hands of someone carefully trained.

The Defendant additionally argues that 922(o) is unconstitutional as applied to him because he was indicted only for possessing a Glock Switch, and, because Glock Switches are becoming more common, they do not meet the "unusual" requirement of "dangerous and unusual." [Doc. 20 at 10]. This argument seemingly equates the fact that Glock Switches are becoming more common to them being "in common use." Moreover, and as explained above, this Court will simply analyze whether Glock Switches are unusually dangerous, and easily finds that they are. A Glock Switch converts a

common handgun into a machine gun, thus making it much more dangerous than just a handgun. A handgun is also smaller than a typical machinegun, making it more difficult to control, and therefore more dangerous, once a Glock Switch is added.

For all the foregoing reasons, the Defendant's conduct here, possession of a Glock Switch, squarely falls outside the scope of conduct that, as the Supreme Court has emphasized, the Second Amendment was intended to protect. See Heller, 554 U.S. 570 at 625 ("[T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns. That accords with the historical understanding of the scope of the right."). Indeed, machineguns, and therefore machinegun conversion kits, are "dangerous and unusual weapons" that fall outside the protection of the Second Amendment. See id. at 624-65. Therefore, the Defendant's constitutional challenge fails at the first, and now only, step of the Heller and Bruen inquiry.

Accordingly, this Court rejects the Defendant's arguments and finds that 18 U.S.C. § 922(o) survives constitutional scrutiny under the Bruen standard. The Defendant's Motion will therefore be denied.

# **ORDER**

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Dismiss [Doc. 20] is **DENIED.**

Signed: February 13, 2024

Martin Reidinger
Chief United States District Judge

8
Case 1:23-cr-00045-MR-WCM   Document 29   Filed 02/13/24   Page 8 of 8